IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW J. ROMERO, et al., | : | |
| | : | |
| Plaintiffs | : | CIVIL NO. 1:13-CV-00591 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| WARDEN ROY JOHNSON, et al., | : | |
| | : | |
| Defendants | : | |

**ORDER**

The instant civil rights complaint was filed pursuant to 42 U.S.C. § 1983 by eight prisoners (collectively, "Plaintiffs") confined at the Northumberland County Prison ("NCP") in Sunbury, PA. (Doc. No. 1.) In the complaint, Plaintiffs allege that prison officials maintained inhumane conditions of confinement, that retaliated against them for complaining of these conditions, denied them access to the grievance procedure, and granted privileges to inmates in a racially discriminatory manner. (Doc. No. 1 at 2–8.) Defendants have filed a motion to dismiss the complaint in its entirety for failure to state a claim. (Doc. No. 47.) For the reasons that follow, the motion will be granted in part and denied in part.

**I.     Background**

Plaintiffs allege that, in the month of February, 2013, they filed several grievances claiming that Defendants were exhibiting racial bias by giving work release, prison jobs, indigent clothing, legal supplies, and respectful treatment to mostly white prisoners. (Doc. No. 1 at 2.) Plaintiffs also allege that, during this time, they filed grievances regarding the conditions of confinement at NCP. Plaintiffs claim the cells at NCP lack hot water and that the showers

1

have only "limited hot water." (Id. at 3.) The prison's cleaning supplies are dilapidated and stored in an area "filled with dirt, bugs, and bodily waste." (Id.) The prison contains many broken windows that let in cold air, and the only heat source is an old, noisy steam heating system. (Id.) Plaintiffs are given "old, ripped up, moldy, dirty" mattresses that have a "foul smell" from having soaked in "human body waste" over the years. (Id.) The cells are also infested with vermin, overcrowded, and only have one prisoner assigned to clean them. (Id. at 3–4.) The inmates are given "hygiene kits" consisting only of an "all-in-one" shampoo/shaving cream/shower gel container and a tube of toothpaste, and are given these kits infrequently. (Id. at 4.) The inmates are also fed meals on dirty trays with dirty cups. (Id.) Plaintiffs also claim that the prison is filled with asbestos, that "black and brown" water comes out of the faucets when turned on, and that the prison officers smoke outside near housing area, allowing smoke to come in to the cells due to the broken windows. (Id.)

Plaintiffs filed grievances regarding the living conditions at the prison and, on February 22, 2013, they were threatened with the use of force by Defendant Lt. Smink "with the support of" Defendants Warden Johnson and Deputy Warden Wheary. (Id.) Plaintiffs were then placed in a single "30 cell" containing only one toilet, one sink, two windows, and eight bunks, without explanation of why they were being moved. (Id. at 5.) The cell had bodily waste smeared on the walls, dead vermin on the ground, and two broken windows. (Id.) Plaintiffs were denied cleaning supplies, and when they requested grievance forms, Lt. Smink told them that they weren't getting any forms, because they were being held in there for filing grievances to begin with. (Id.) Defendants Sgt. Brouse and Sgt. Lehman also denied their request for grievance forms. (Id.) Plaintiffs were denied access to a shower that day due to a lack of hot water. (Id.)

On February 23, 2013, Plaintiffs were denied a cell cleaning by Defendants Lt. Smink and Lt. Walburn, and were informed by Sgt. Lehman that they were to be locked in for 22 hours, with no reason given. (Id.) On February 24, Sgt. Lehman informed them that they would be denied access to the shower and recreation facilities, and told them that it was because they had "upset the wrong people." (Id. at 6.) Later that day, Defendant Lt. Carl also denied their requests for showers and recreation. (Id.) When they continued to ask for grievance forms, a wooden door was placed over their cell on the orders of Sgt. Lehman, Warden Johnson, and Deputy Warden Wheary. (Id.) On February 25, Plaintiffs were again denied showers but were given two hours of recreation time. Later that day, Lt Smink and Sgt. Brouse told Plaintiffs that things would get harder for them because they continued to ask for grievance forms. (Id.)

On February 26, Lt. Carl informed Plaintiffs that they would have to wear handcuffs attached to a black box and leg chains during their recreation time, and stated that this was the punishment Lt. Smink referred to the previous day. (Id.) On February 27, Plaintiffs informed Lt. Smink about the broken windows and complained about it being cold. (Id. at 7.) Smink stated that it could "get colder" if they kept asking for grievances and told them that they would not be allowed recreation time that day and that their visitation and phone rights were being denied. (Id.) Plaintiffs were later denied showers as well. (Id.) That same day, Plaintiffs were again denied grievance forms when they requested them from Lt. Carl. (Id.) Shortly after, Lt. Carl also ordered the cell block to be locked down, then came to Plaintiffs' cell with several other officers and threatened to spray them with a can of mace he was holding. (Id.)

Lt. Carl then moved Plaintiffs to the maximum security unit in the basement of NCP and placed them in separate cells with two prisoners in each cell. (Id.) The cells were unheated,

3

infested with vermin, and had human waste smeared on the walls. (Id. at 7–8.) Plaintiffs were denied cleaning supplies and were not permitted to bring their property or legal paperwork with them. (Id. at 7–8.) Lieutenant Carl told Plaintiffs that he had been informed that Plaintiffs were planning to file a lawsuit and that he was going to "put a stop to it." (Id. at 8.)

On February 28, Plaintiffs were brought back to the "30 cell" they had previously been held in. (Id.) Plaintiffs then saw that their cell had apparently been searched, as their belongings were in disarray, their photos were destroyed, and all of their legal paperwork was removed. (Id.) The windows in the cell had also been removed. (Id.) No explanation was given for the search, the removal of their paperwork, or the removal of the windows. (Id.)

Plaintiffs filed the instant complaint on March 4, 2013. (Doc. No. 1.) On August 1, 2014, Defendants filed a motion to dismiss the complaint for failure to state a claim. (Doc. No. 47.) For the reasons that follow, this court will grant Defendants' motion in part and deny the motion in part.

## II. Legal Standard—Motion to Dismiss

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Fair notice" in the context of Rule 8 "depends on the type of case—some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).

"[A] situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Id. A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); see also, Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations omitted).

A defendant may attack a complaint by a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. Iqbal, 556 U.S. at 663 (citing Twombly, 550 U.S. at 555, 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); see also Phillips, 515 F.3d at 234; Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007); Stevenson v.

5

Carroll, 495 F.3d 62, 66 (3d Cir. 2007). When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678 (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003); Youse v. Carlucci, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001); Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

**III.     Discussion**

In the complaint, Plaintiffs appear to set forth four separate claims: (1) that Defendants repeatedly refused to provide them with grievance forms when they requested them; (2) that

Defendants retaliated against Plaintiffs for filing grievance forms by subjecting them to more severe and unsanitary conditions of confinement than usual; (3) that the conditions of confinement at NCP constitute cruel and unusual punishment; and (4) that Defendants allocate prison jobs and other privileges in a racially discriminatory manner.[1]  (Doc. No. 1 at 2–8.) Defendants argue that each of these claims, as stated in the complaint, fails as a matter of law. (Doc. No. 54 at 16–29.)  This court will examine the argument with respect to each claim in turn.

### A. Denial of Grievance Forms

Plaintiffs allege that Defendants refused to give them grievance forms on multiple occasions.  (See, e.g., Doc. No. 1 at 5–7.)  Defendants argue that the refusal to provide grievance forms to inmates is not a legally cognizable claim.  (Doc. No. 54 at 16.)  This court agrees. Although the filing of a grievance is a constitutionally protected activity, see Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003) (noting that the filing of a grievance is protected by the First Amendment), access to a grievance procedure is not a constitutional right.  See, e.g., Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)) ("Prisoners do not have a constitutional right to prison grievance procedures."). Because Plaintiffs have no constitutional right to a prison grievance procedure, their allegations regarding Defendants' denial of grievance forms fail to state a legally cognizable claim.  Thus, Defendants' motion to dismiss must be granted with respect to this claim.[2]

---

[1] Plaintiffs do not clearly label the separate claims in their complaint aside from their claim of retaliation. Because Plaintiffs are proceeding pro se, this court has attempted to construe the complaint liberally to determine the legal claims that were intended.  See Diluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) (stating that courts "must liberally construe [pro se] pleadings" and "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name").

[2] This court notes that the denial of grievance forms may still be relevant for other purposes, such as rebutting an affirmative defense based on their failure to exhaust administrative remedies.  See, e.g.,

B.     Retaliation for Filing Grievances

Plaintiffs allege that Defendants unlawfully retaliated against them for using the prison grievance system by threatening them and subjecting them to more severe prison conditions than normal. (Doc. No. 1 at 4–8.) In order to state a claim of retaliation, prisoners must allege three elements: (1) that they were engaged in constitutionally protected activity; (2) that the prisoner suffered an "adverse action" at the hands of prison officials; and (3) that the constitutionally protected activity was a "substantial or motivating factor" behind the adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). In order to qualify as an "adverse action" under this test, the action taken by the prison officials must be "sufficient to deter a person of ordinary firmness" from continuing to conduct the constitutionally protected activity. Id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).

Plaintiffs unquestionably have alleged that they were engaged in constitutionally protected activity, as the filing of grievance forms is an activity protected by the First Amendment. Mitchell 318 F.3d at 530; see also Robinson v. Taylor, 204 F. App'x 155, 156–57 (3d Cir. 2006). Defendants also do not dispute that Plaintiffs have alleged facts sufficient to show that the filing of these grievances was a substantial or motivating factor behind the alleged retaliatory actions. Rather, Defendants argue that the alleged retaliatory actions were not sufficient to deter a person of ordinary firmness from continuing to exercise their First Amendment rights. (Doc. No. 54 at 17–20.)

Some examples of what the Third Circuit has held qualify as "adverse actions" under this test are: "[1] several months in disciplinary confinement; [2] denial of parole, financial penalties,

---

Mitchell, 318 F.3d at 529 (3d Cir. 2003).

and transfer to an institution whose distance made regular family visits impossible; and [3] placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs." Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) (citing Mitchell, 318 F.3d at 530; Rauser, 241 F.3d at 333; Allah, 229 F.3d at 225–26). By contrast, the use of threats and the display of racially offensive posters and other objects have been held to not constitute adverse action. Id. The Third Circuit has also explained that, generally speaking, "whether a prisoner-plaintiff has met [the "adverse action" prong] of his or her retaliation claim will depend on the facts of the particular case." Allah, 229 F.3d at 225; see also Kelly v. York County Prison, 340 F. App'x 59, 61 (3d Cir. 2009) (holding that prisoner who claimed to have been repeatedly denied prison employment in retaliation for filing grievances had successfully "raise[d] a question of fact about whether such denial would deter a person of ordinary firmness from filing grievances.")

      Plaintiffs allege that the following actions were taken in retaliation for their filing of grievances: they were threatened with violence, placed together in a single cell with broken windows for six days, placed in maximum security cells for one day, refused cleaning supplies to clean their unsanitary living space, denied showers on four days, denied recreation time, placed in painful handcuffs for two days, and had their property (including legal paperwork) destroyed. (Doc. No. 1 at 4–8.) While these actions may not be as extreme as the examples listed in Dunbar, this court finds that Plaintiffs have pleaded actions of sufficient severity to state a claim of retaliation. Whether the actions taken against them were actually sufficient to deter a person of ordinary firmness from filing future grievances will depend on factual questions that this court may not properly determine at this stage. Accordingly, Defendants' motion to dismiss will be

9

denied with regard to this claim.

  **C.**  **Inhumane Conditions of Confinement**

  Plaintiffs also claim that the conditions at NCP are so inhumane as to violate the Eighth Amendment's prohibition of cruel and unusual punishment. (Doc. No. 1 at 2–8.) While the "Constitution 'does not mandate comfortable prisons' . . . neither does it permit inhumane ones," and prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981); Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). In order to state a claim of inhumane prison conditions, a plaintiff must allege that prison officials acted with "deliberate indifference" to the health or safety of inmates. Id. at 834. This requires that a plaintiff satisfy "both an objective ('Was the deprivation sufficiently serious') and a subjective ('Did the officials act with a sufficiently culpable state of mind?') test." Allah v. Bartkowski, 574 F. App'x 135, 138 (3d Cir. 2014). To satisfy the objective component of the test, a plaintiff must show that the conditions of the prison deprived him or her of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834; see also Wilson v. Seiter, 501 U.S. 294, 304 (1991) ("*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.") (emphasis in original). To satisfy the subjective component of the test, the plaintiff must show that the prison official both knew of and disregarded those conditions. Farmer, 511 U.S. at 837 Defendants argue that Plaintiffs have failed to meet this test because the severity of

the conditions, combined with the relatively short alleged duration of those conditions, does not satisfy the objective component of the test. (Doc. No. 54 at 20–25.)

Plaintiffs allege, *inter alia*, that the cells at NCP are infested with vermin, that many of the cell windows are broken, exposing inmates to the cold air in winter, that the cell mattresses are moldy and soiled with human waste, that the trays used to serve inmates food were unsanitary, that the prison passes out insufficient hygiene supplies, and that the cleaning supplies are stored in an area soiled by human waste. (Doc. No. 1 at 3–4.) Plaintiffs also allege that they were moved to two separate living areas (the shared "30 cell" and the maximum security area) that were soiled with bodily waste and that they were denied cleaning supplies when they complained about these conditions. Taken together, these alleged conditions are sufficient to state an Eighth Amendment claim of inhumane conditions of confinement.

The Third Circuit has recognized that unsanitary cell conditions can rise to the level of an Eighth Amendment violation. Allah v. Bartkowski, 574 F. App'x at 138–39 (finding that plaintiff stated an Eighth Amendment claim where complaint alleged unsanitary conditions caused by mentally ill inmates smearing feces on the walls). Defendants point out that the allegations in the complaint took place over only a short period of time and that it is generally recognized that the duration of conditions is a major factor in determining whether they satisfy the objective component of a conditions of confinement claim. (Doc. 54 at 20–25; see, e.g., Whitnack v. Douglas Cnty., 16 F.3d 954, 958 (8th Cir. 1994)). It is true that some of the conditions Plaintiffs complain of were only imposed upon them for a period of about a week, when they were placed in a shared "30 cell" and in the maximum security area. (See Doc. No. 1 at 4–8.) However, Plaintiffs also complain of more general conditions within the prison, such as

their allegations that the mattresses at NCP "are old, ripped up, moldy, dirty, never cleaned after use" and soaked in human bodily waste. (Doc. No. 1 at 3.) When read in the light most favorable to Plaintiffs—and bearing in mind that Plaintiffs drafted the complaint *pro se*—it is clear that this, and other similar language, is intended as an allegation of ongoing conditions that preceded the events involving the retaliatory actions. These allegations successfully raise a factual question of whether the conditions of confinement at NCP posed a serious risk to the health of inmates.

When taken together, Plaintiffs' allegations of unsanitary conditions—including windows left broken during the winter, fecal matter smeared in some cells and in the cleaning supply storage area, and rampant vermin infestation—state a claim of inhumane conditions of confinement under the Eighth Amendment. Defendants' motion to dismiss will be denied as to this claim.

### D.     Racial Discrimination

Plaintiffs finally allege that NCP officials treat inmates in a racially discriminatory manner. (Doc. No. 1 at 2.) The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This prohibits government entities—including prisons—from acting based on racial classifications unless those classifications are "narrowly tailored measures that further compelling government interests." Johnson v. California, 543 U.S. 499, 505 (2005). To state a claim under the Equal Protection clause, a plaintiff must allege that "(1) he was a member of a protected class; (2) he was treated differently from similarly situated persons outside of his protected class; and (3) the discrimination was purposeful or intentional rather

than incidental." Hart v. Whalen, 3:08-cv-0828, 2011 WL 1099280 at *16 (M.D. Pa. Feb. 7 2011) (citing Washington v. Davis, 426 U.S. 229, 239 (1976); Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 423–24 (3d Cir. 2000)).

  Defendants' contend that Plaintiffs' claim of racial discrimination fails as a matter of law because they have not alleged sufficiently specific facts to demonstrate that Defendants have acted with a discriminatory intent. (Doc. No. 54 at 25–29.) This court agrees. In the instant complaint, the only allegation pertaining to racial discrimination is that Defendants exhibited "bias and racial conduct" by "only allowing mostly whites [to] go to work release, have [p]rison jobs, receive indigent clothes [and] legal supplies, and be treated with respect." (Doc. No. 1 at 2.) This court is mindful that pro se pleadings must be held to a more relaxed standard than those drafted by counsel, but the bare allegation of racial bias in the complaint is insufficient to state a claim of racial discrimination under the Equal Protection clause for several reasons.

  First, although the granting of privileges to white inmates more often than inmates of other races is consistent with a discriminatory intent, this allegation on its own falls short of providing a basis from which to infer such discriminatory intent. See, e.g., Iqbal, 556 U.S. at 678–79 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted). Second, the bare allegation that white inmates are granted privileges more often than other inmates is insufficient to show that the inmates in question were "similarly situated" for the purposes of qualifying for these privileges. See, e.g., Tillman, 221 F.3d at 423 (Equal Protection Clause requires that "persons who are similarly situated should be treated in the same manner"). Finally, Plaintiffs do not actually allege that they have individually been

discriminated against. Rather, Plaintiffs only allege that the Defendants generally exhibited "bias and racial conduct" against inmates and that the Plaintiffs filed grievance forms to complain of the situation. (Doc. No. 1 at 2.) It is unclear from this statement whether all of the Plaintiffs were in fact directly affected by this discrimination, as would be required for Plaintiffs to have standing to assert this claim. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). For these reasons, Defendants' motion to dismiss will be granted with respect to Plaintiffs' claim of racial discrimination.

## IV.    Conclusion

For the reasons stated above, Defendants' motion to dismiss will be granted as to Plaintiffs' claims regarding the denial of grievance forms and racial discrimination, and will be denied as to Plaintiffs' claims of retaliation and inhumane conditions of confinement. Because Plaintiffs have no constitutional right to a grievance procedure, this court will dismiss their claim regarding the denial of grievance forms with prejudice. However, Plaintiffs' racial discrimination claim will be dismissed without prejudice. Plaintiffs may seek leave to amend the complaint to attempt to restate their claim of racial discrimination, should they so desire. Plaintiffs are advised that any proposed amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Young v. Keohane, 809 F. Supp. 1185, 1189 (M.D. Pa. 1992).

An appropriate order will issue.